1 | Michael S. Kun (SBN 208684)
2 | Kevin D. Sullivan (SBN 207343)
  | EPSTEIN BECKER & GREEN, P.C.
3 | 1925 Century Park East, Suite 500
  | Los Angeles, CA 90067
4 | Telephone: (310) 556-8861
  | Facsimile: (310) 553-2165
5 | mkun@ebglaw.com
6 | ksullivan@ebglaw.com

7 | Attorneys for Defendant
8 | WESTMED AMBULANCE, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE DERSHEM, individually, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTMED AMBULANCE, INC., GLOBAL MEDICAL RESPONSE, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-01050<br><br>**NOTICE OF REMOVAL OF ACTION BY DEFENDANT WESTMED AMBULANCE, INC.** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Westmed Ambulance, Inc. ("Defendant"), contemporaneously with the filing of this notice, is effecting the removal of the above-captioned action, *Kyle Dershem vs. Westmed Ambulance, Inc., et al.*, Case No. 24STCV32305, from the Superior Court of the State of California for the County of Los Angeles ("State Court Action") to the United States

- 1 -
DEFENDANT WESTMED AMBULANCE, INC.'S NOTICE OF REMOVAL

FIRM:66762565v1

District Court for the Central District of California. Jurisdiction is invoked pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, in that the number of members of the proposed plaintiff class in the aggregate is more than 100, Plaintiff Kyle Dershem ("Plaintiff") is a citizen of a state different than at least one defendant, and the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest.

## I.   PLEADINGS, PROCESS AND ORDERS

1. On or about December 6, 2024, Plaintiff commenced the above-captioned action in the Superior Court of the State of California, County of San Diego, against Defendant and Global Medical Response, Inc. ("GMR"). The action is entitled *Kyle Dershem v. Westmed Ambulance, Inc., et al.* and is assigned Case No. 24STCV32305. True and correct copies of the original Summons and Complaint that were served upon Defendant on January 7, 2025, along with related documents, are attached hereto collectively as **Exhibit 1**.

2. On information and belief, GMR has not been properly served with the Summons and Complaint. (Okada decl., ¶ 2.)

3. **Exhibit 1** constitutes all of the process, pleadings and orders served on Defendant in the State Court Action.

4. On February 5, 2025, Defendant filed and served its Answer in the State Court Action. Attached as **Exhibit 2** is a copy of Defendant's Answer, which constitutes all of the pleadings and other papers served by Defendant in the State Court Action.

## II.   BASIS FOR REMOVAL

5. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to the United States District Court by Defendant pursuant to the provisions of 28 U.S.C. §§ 1332(d), 1441 and 1453 in that it is a purported class action in which there are more than 100 putative class members, it is between citizens of different states, and

the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

6.   CAFA was enacted to expand federal jurisdiction over purported class actions. It provides that a purported class action may be removed in accordance with 28 U.S.C. § 1446 if: (a) membership in the putative class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000.00. 28 U.S.C. §§ 1332(d), 1453(b).

7.   As explained more fully below, this Court has original jurisdiction under CAFA over all claims brought by Plaintiff, on behalf of himself and all members of the putative class. Because Plaintiff's action could have been filed in this Court, Defendant may remove it pursuant to 28 U.S.C. § 1441.

### A.   Size of the Proposed Class

8.   CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.

9.   Plaintiff contends that all of Defendant and GMR's (collectively, "Defendants") employees who he seeks to represent in this action were also "jointly employed" by GMR and that "Defendants" both violated the law as to such persons. (Complaint ¶¶ 1, 14, 35-149.)

10.  Plaintiff seeks to represent all of Defendants' allegedly "jointly employed" California-based non-exempt, hourly paid current and former employees for a period of time beginning four years from the filing of the Complaint on December 6, 2024. (Complaint ¶¶, 3, 4, 14, 58.)[1]

---

[1] Plaintiff's Complaint suggests it was filed on October 8, 2024. (Complaint, ¶ 4.) In fact, it was signed on December 6, 2024, and the electronic filing stamp indicates it was filed at 12:14 p.m. on December 6, 2024. (Complaint.)

11. Assuming, *arguendo*, that Defendants "jointly employed" all of the persons Plaintiff seeks to represent, there have been approximately 1,227 non-exempt employees in California since December 6, 2020. (Okada decl., ¶ 6.) Accordingly, the putative class has more than 100 members.

### B. Citizenship

12. CAFA's requirement that any one member of the proposed class be a citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)) is also satisfied here.

13. Plaintiff avers in his Complaint that he resides in California. (Complaint, ¶ 8.) In addition, information supplied to Defendants by Plaintiff and maintained in Defendants' files reflects that Plaintiff has lived and worked in California since at least 2016. (Okada decl., ¶ 7.) All of these facts are indicia of Plaintiff's California citizenship. *Anderson v. Watts*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary; and a domicile, when acquired, is presumed to continue until it is shown to have changed."); *CarMax Auto Superstores CA LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1091, fn. 38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state"); *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (noting that the factors relevant to domicile determination include residence and place of employment); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) (observing "that the party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change").

14. "In determining whether there is diversity of citizenship between corporate parties, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

1  *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002)
2  (internal citations omitted).

3      15.    GMR is incorporated in Delaware and has its principal place of
4  business in Lewisville, Texas. (Okada decl., ¶ 2.)

5      16.    For these reasons, the requirements for diversity jurisdiction are met
6  because Plaintiff and at least one defendant are citizens of different states.

### C. Amount In Controversy

8      17.    A notice of removal need only provide a "'plausible allegation that the
9  amount in controversy exceeds the jurisdictional threshold,' and need not contain
10  evidentiary submissions." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899
11  F.3d 785, 788 (9th Cir. 2018) (quoting *Dart Cherokee Basin Operating Co., LLC v.
12  Owens*, 574 U.S. 81, 89 (2014)). As the Ninth Circuit has explained, "the amount
13  in controversy is not limited to damages incurred prior to removal." *Chavez v.
14  JPMorgan Chase & Co.*, 888 F.3d 413, 414 (9th Cir. 2018). "Rather, the amount
15  in controversy is determined by the complaint operative at the time of removal and
16  encompasses all relief a court may grant on that complaint if the plaintiff is
17  victorious." *Id.* at 414–415.

18      18.    CAFA's requirement that the aggregate amount in controversy
19  exceeds $5,000,000.00, exclusive of interest and costs, is satisfied here. Although
20  Defendant disputes liability and damages, the damages Plaintiff claims for himself
21  and the putative class exceed $5,000,000.00.

22      19.    When evaluating the amount in controversy, "the Court accepts the
23  allegations contained in the complaint as true and assumes the jury will return a
24  verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines,
25  Inc.*, 692 Fed. Appx. 806, 807 (9th Cir. 2017) (citing *Campbell v. Vitran Exp., Inc.*,
26  471 Fed. Appx. 646, 648 (9th Cir. 2012)).

27      20.    A removal under CAFA may rely on "a chain of reasoning" that is
28  based on "reasonable" "assumptions." *LaCross v. Knight Transp., Inc.*, 775 F.3d

1200, 1201 (9th Cir. 2015). Specifically, in calculating the amount in controversy, an "assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015)); *accord Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.").

21. The putative class consists of approximately 1,227 current and former non-exempt employees. (Okada decl., ¶ 6.) The average base hourly rate paid to the putative class from December 6, 2020 through the present was $17.22. (*Id*, ¶ 7.) The putative class worked a total of approximately 35,841 bi-weekly pay periods during this time period. (*Id*., ¶ 8.) The number of former non-exempt employees is approximately 844 individuals. (*Id*., ¶ 6.)

22. The Complaint seeks damages and penalties for a variety of alleged wage-hour violations for a period commencing on December 6, 2020. (Compl., ¶ 3 (bringing claims from four years from the filing of the Complaint through trial).) Plaintiff alleges that he and the putative class are entitled to recover damages, penalties, attorney's fees and costs on a variety of wage-hour claims. (Complaint.)

### Overtime

23. In support of his overtime claim, Plaintiff alleges:

> Defendants have had a ***consistent policy*** of failing to pay straight and overtime wages in violation of California state wage and hour laws by not paying overtime to Plaintiff and the putative class members when they work over eight (8) hours in a day and/or 40 hours in a workweek, as well as for the first eight (8) hours of work on the seventh consecutive day of work within a workweek. Defendants also have their employees work without payment, including, but not limited to, 30 minutes of work time that Defendants automatically deducted each day for meal periods that were never provided and which are not legally

> adequate. Additionally, employees were not paid for all of the time that they spent working under their employer's control due to Defendants' improper rounding practices and policy.

(Complaint, ¶ 82, emphasis added.)

24. Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not paid for at least one hour of overtime per week from February 22, 2021 through the present. *Reyes v. Carehouse Healthcare Center, LLC*, No. SACV 16-01159-CJC(MRWx), 2017 WL 2869499, at *3 (C.D. Cal. July 5, 2017) (finding an assumption of one hour of overtime per week to be appropriate when plaintiff alleged "regular" violations).

25. Thus, the amount in controversy on this overtime claim alone exceeds **$1,851,546.06**.[2]

## Minimum Wage

26. Like his overtime time, in support of his minimum wage claim, Plaintiff alleges:

> Defendants, ***as a matter of established company policy and procedure***, ***at each and every one*** of the individual facilities owned and/or operated by Defendants, failed to pay Plaintiff and the putative class members for all hours worked, which resulted in the members of the Minimum Wage Class earning less than the legal minimum wage in the State of California.

(Complaint, ¶ 87, emphasis added.)

27. Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not paid for at least one hour of overtime per week from February 22, 2021 through the present. *Cabrera v. South Valley Almond Company, LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding an assumption of one hour of one hour of

---

[2] 35,841 biweekly pay periods x 2.0 weeks per pay period x 1.0 hour per week x $17.22 average hourly base rate of pay x 1.5 (overtime rate) = **$1,851,546.06**.

unpaid minimum wages per week to be consistent with "at times" and "on occasion" allegations based on "policies and/or practices").

28. The amount of allegedly unpaid minimum wages is doubled since Plaintiff seeks to recover liquidated damages under Labor Code section 1194.2. (Compl., ¶ 89.) See *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995 n.7 (2022) (permitting liquidated damages for minimum wage claim under CAFA removal). Thus, the amount in controversy on this minimum wage claim alone exceeds **$2,468,728.08**.[3]

### Meal Periods

29. Plaintiff alleges in support of his meal period claim:

> Defendants ***do not*** have a compliant written meal period policy and/or ***do not*** provide its employees with meal periods consistent with the requirements of Labor Code section 512. By employing these individuals for work periods of more than five (5) hours and ten (10) hours per day without providing legally adequate meal periods (such as short, on-duty, late, interrupted, or missed meal periods), and failing to provide compensation for unprovided and/or legally inadequate meal periods, as alleged above, Defendants violated the provisions of Labor Code sections 512 and 226.7. As a result of the unlawful acts of Defendants, Plaintiff and the putative class members have been deprived of premium wages in amounts to be determined at trial, and are entitled to the recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226.7 and 512, as well as the I.W.C. Wage Orders.

(Complaint, ¶ 93.)

30. Based on these allegations, it is reasonable to assume, for purposes of removal only, Defendant could assume that putative class members were not

---

[3] 35,841 biweekly pay periods x 2.0 weeks per pay period x 1.0 hour per week x $17.22 average hourly base rate x 2.0 (liquidated damages) = **$2,468,728.08**.

provided a compliant meal period 60% of the time. *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding a 60% violation rate assumption to be reasonable where complaint is indeterminate with respect to violation rates); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151–52 (S.D. Cal. 2018) (finding a 60% violation rate assumption to be reasonable where complaint alleged "policy and practice" of meal period violations).However, Defendant will only assume employees were not provided compliant meal periods 20% of the time.

31.   Thus, using only a 20% violation rate, the amount in controversy on this meal period claim alone exceeds **$1,234,364.04**.[4]

### Rest Periods

32.   In his Complaint, Plaintiff alleges in support of his rest period claim:

> During the relevant time period, Defendants ***required*** Plaintiff and the putative class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked, or major fraction thereof.

(Complaint, ¶ 118, emphasis added.)

33.   Plaintiff further alleges in support of his rest period claim:

> During the relevant time period, Defendants willfully ***required*** Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods.

(Complaint, ¶ 119, emphasis added.)

34.   Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not provided a compliant rest period 60% of the time. *Bryant*, 284 F. Supp. 3d at 1151–52 (finding a 60% violation rate

---

[4] 35,841 biweekly periods x 2.0 weeks per pay period x 5.0 days per week x $17.22 average hourly base rate of pay x 0.20 (*i.e.*, 20% violation rate) = **$1,234,364.04**.

assumption to be reasonable where complaint alleged "policy and practice" of meal period violations). However, Defendant will only assume that employees did not receive rest periods 20% of the time.

35. Thus, using only a 20% violation rate, the amount in controversy on this rest period claim alone exceeds **$1,234,364.04**.[5]

### Wage Statement Penalties

In his Complaint, Plaintiff alleges:

> Plaintiff contends that he and the putative class members have been injured by Defendants' failure to provide all of the requisite information on its itemized wage statements in that such failure, *inter alia*: (1) masks possible and actual underpayments to Defendants' employees; (2) makes it difficult for Defendants' employees to verify that they have in fact been paid the proper amounts owing for all hours worked; and (3) makes it difficult for Plaintiff to identify his true employer for purposes of this litigation. Said conduct was done knowingly and intentionally, since Defendants are aware of California law, and with the design to harm Plaintiff and the putative class members.

(Complaint, ¶ 96.)

36. Because Plaintiff's wage statement claim is derivative of his claims for failing to timely pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, as well as accurately report all hours worked, it is reasonable to assume a 100% violation rate for his section 226(a) claim.

37. "Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendant[] to assume a 100% violation rate" in valuing wage statement claims. *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017); *accord Wicker v. ASC Profiles LLC*, No.

---

[5] 35,841 biweekly periods x 2.0 weeks per pay period x 5.0 days per week x $17.22 average hourly base rate of pay x 0.20 (*i.e.*, 20% violation rate) = **$1,234,364.04**.

2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021) ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

38. The remedy for an alleged violation of Labor Code section 226(a) is found in section 226(e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

39. The amount in controversy on this claim alone, assuming a 100% violation rate, is **$1,792,050.00**, assuming the lower $50 penalty applies instead of the $100 penalty that would be available for the "subsequent" alleged violations.[6]

**Penalties for Untimely Payment of Wages During Employment**

40. In his Complaint, Plaintiff alleges:

> Defendants failed to pay Plaintiff and putative class members an additional hour of pay at their regular rate of compensation for each date on which it failed to provide legally compliant rest periods and/or meal periods. As set forth in *Naranjo v. Spectrum Security Services, Inc,.* missed-break premium pay are wages subject to the Labor Code's timely payment and reporting requirements, thus Defendants failure to pay Plaintiff and putative class members constitutes a violation of California Labor Code Section 204.

---

[6] 35,841 bi-weekly wage statements x $50 penalty allegedly non-compliant wage statement x 1.0 (*i.e.*, 100% violation rate) = **$1,792,050.00**.

(Complaint, ¶ 113.)

41. The remedy for an alleged violation of Labor Code section 204 is found in section 210(a):

> 1. For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> 2. For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

42. Plaintiff's allegations reflect that he is seeking heightened penalties. (Compl., ¶ 114.)

43. Because the remedy found in Labor Code section 210 is a penalty, there is a one-year statute of limitations. Lab. Code § 340(a). During the relevant time period since December 6, 2023, there were 10,056 bi-weekly pay periods collectively worked by the putative class. (Okada decl., ¶ 9.)

44. Because Plaintiff's section 204 claim is derivative of his claims for failing to timely pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, it is reasonable to assume a 100% violation rate for his section 204 claim. *Wicker*, 2021 WL 1187271, at *4 ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

45. Thus, Plaintiff has placed **$2,011,200.00** in controversy in connection with his section 204 claim.[7]

**Waiting Time Penalties for Untimely Payment of Wages at Employment End**

46. In his Complaint, Plaintiff alleges:

---

[7] 10,056 bi-weekly pay periods x $200 penalty per pay period x 1.0 (*i.e.*, 100% violation rate) = **$2,011,200.00**.

> Defendants willfully failed and refused to timely pay all straight time wages, overtime, and meal break compensation to Plaintiff and the putative class members whose employment terminated. As a result, Defendants are liable to Plaintiff and the putative class members for waiting time penalties, together with interest thereon and attorneys' fees and costs, under Labor Code section 203.

(Complaint, ¶ 106.)

47. Because Plaintiff's claim for waiting time penalties is derivative of his claims for failing to pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, it is reasonable to assume a 100% violation rate for his section 203 claim. That is, "because it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence." *Wicker*, 2021 WL 1187271, at *4.

48. During the relevant time period, there were 844 putative class members whose employment ended at any time since December 6, 2020. (Okada decl., ¶ 5a.) Accordingly, Plaintiff has placed **$3,488,083.20** in controversy in connection with his claim for waiting time penalties.[8]

### **Attorneys' Fees**

49. Based on his claims, Plaintiff also seeks to recover attorneys' fees. (Compl., ¶¶ 83, 91, 93, 102, 109, 130, 137, Prayer for Relief.) In *Fritsch*, the Ninth Circuit reversed the district court's remand order under CAFA because the district court erred by failing to include future attorneys' fees recoverable by statute or contract when determining whether the amount in controversy was met. 899 F.3d at 788. Because the *Fritsch* plaintiff had demanded attorneys' fees for alleged

---

[8] 30 days (maximum statutory penalty under Cal. Lab. Code § 203) x 8.0 hours per day x $17.22 (average base rate of pay) x 844 former non-exempt employees = **$3,488,083.20**.

- 13 -
DEFENDANT WESTMED AMBULANCE, INC.'S NOTICE OF REMOVAL

FIRM:66762565v1

Labor Code violations under sections 218.5, 226 and 1194, the Ninth Circuit held that, "Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Id.* at 794. Like the plaintiff in *Fritsch*, Plaintiff here demands attorneys' fees pursuant to, a variety of Labor Code sections. (Compl., ¶¶ 83, 91, 93, 102, 109, 130, 137, Prayer for Relief.) Attorneys' fees are thus included in the amount in controversy here. Assuming attorneys' fees of 25% (the Ninth Circuit's benchmark[9]) of the **$1,611,607.34**[10] in alleged damages, restitution, and penalties sought, the amount in controversy on Plaintiff's attorneys' fees would be **$2,902,901.84**.[11]

### Injunctive Relief

50.  Plaintiff also seeks injunctive relief. (Compl., Prayer for Relief.) While it is impossible to quantify the costs of compliance with any such injunction, any potential changed practice would increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes). Accordingly,

---

[9] The Ninth Circuit's established benchmark of 25% of damages for an award of attorneys' fees in class actions provides a reasonable basis to determine the amount of attorneys' fees that may be recovered in this case. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Rwomwijhu v. SMX, LLC*, No. CV 16-08105-AB (PJWx), 2017 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (adding 25% in attorneys' fees in determining the amount in controversy for CAFA jurisdiction).

[10] $1,851,546.06 (overtime) + $2,468,728.08 (minimum wage liquidated damages) + $1,792,050.00 (wage statement penalties) + $2,011,200.00 (section 210 penalties) + $3,488,083.20 (waiting time penalties) = **$11,611,607.34**.

[11] $11,611,607.34 x 0.25 = **$2,902,901.84**.

factoring in the injunctive relief that Plaintiff seeks, the amount in controversy would even further exceed $5,000,000.00.

### Total Amount in Controversy

51. Exclusive of Plaintiff's claims for expense reimbursement, interest, costs, and injunctive relief, the total amount in controversy exceeds the jurisdictional requirement of $5,000,000.00 as follows:

| | |
|---|---|
| Overtime | $1,851,546.06 |
| Minimum wage and liquidated damages | $2,468,728.08 |
| Meal periods | $1,234,364.04 |
| Rest periods | $1,234,364.04 |
| Wage statement penalties | $1,792,050.00 |
| Section 210 penalties | $2,011,200.00 |
| Waiting time penalties | $3,488,083.20 |
| Attorneys' fees | $2,902,901.84 |
| Total: | **$14,514,509.20**[12] |

This total does not include any amounts for Plaintiff's expense reimbursement, reporting time, split shift or sick pay claims or his request for injunctive relief. Nor does this total include any post-removal amounts (other than attorneys' fees). Including those claims would push the amount in controversy further above the $5,000,000.00 threshold.

52. If challenged to do so by Plaintiff or this Court, Defendant can and will present any additional evidence to establish by a preponderance of evidence that Plaintiff's claims exceed the jurisdictional minimum of $5,000,000.00. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (explaining that a removing defendant need only present a short and plain statement of the grounds for federal jurisdiction in its removal papers and need not present evidence to establish the amount in controversy until challenged to do so).

---

[12] Of course, even using more conservative violation rates than those already employed by Defendant herein, the amount in controversy would still be well above the $5,000,000.00 threshold.

### III. TIMELINESS OF REMOVAL

This notice of removal is being timely filed within 30 days of January 7, 2025, the date on which the summons and complaint were served upon Defendant.

DATED: February 6, 2025        EPSTEIN BECKER & GREEN, P.C.

By: */s/ Michael S. Kun*
    Michael S. Kun
    Kevin D. Sullivan

Attorneys for Defendant
WESTMED AMBULANCE, INC.